1

2

3

4                            UNITED STATES DISTRICT COURT

5                                  DISTRICT OF NEVADA

                                          * * *
6                                          )
   KEN ROBERTS,                            )
7                                          )
                Plaintiff,                 )
8                                          )          2:09-CV-02382-PMP-LRL
    v.                                     )
9                                          )
   RYAN KLEIN, HOWARD SKOLNIK,             )          ORDER
10  BRIAN WILLIAMS, CLARENCE KING,         )
   KEN NICHOLAS, LAVERT TAYLOR,            )
11  CHERYL BURSON, and JAMES               )
   GREGORY COX,                            )
12                                         )
                Defendants.                )
13                                         )

14          Presently before the Court is Defendants' Motion to Dismiss Plaintiff's

15  Complaint (Doc. #24), filed on December 15, 2010 by Defendants Ryan Klein, Brian

16  Williams, Clarence King, Ken Nicholas, Lavert Taylor, Cheryl Burson, and James Gregory

17  Cox.  Plaintiff filed an Opposition (Doc. #29) on January 7, 2011.  Defendants filed a Reply

18  (Doc. #31) on March 2, 2011.

19  **I. BACKGROUND**

20          Plaintiff Ken Roberts currently is an inmate at the Southern Desert Correctional

21  Center ("SDCC").  (Compl. (Doc. #8).)  Defendants are administrators and employees with

22  the Nevada Department of Corrections ("NDOC") and SDCC.  (Id.)  Plaintiff is a "Black

23  Inmate of Jewish Tenet and Faith."  (Id.)  In February 2009, Plaintiff sought to be provided

24  kosher meals to observe his religion's dietary requirements.  (Id.)  In June 2009, Plaintiff

25  received notice from an associate warden at the Northern Nevada Correctional Center

26  ("NNCC") that to receive kosher meals, Plaintiff must be recognized by an outside Jewish

1    group or organization.  (Id.)

2         On June 30, 2009, Plaintiff was transferred from NNCC to SDCC.  (Id.)  Upon

3    arrival at the new prison, Plaintiff sought kosher meals.  (Id.)  In August 2009, Defendant

4    Chaplain Lavert Taylor ("Taylor") granted Plaintiff and several other inmates approval to

5    receive kosher meals.  (Id.)  However, SDCC kitchen manager Defendant Clarence King

6    ("King") failed to provide Plaintiff with kosher meals.  (Id.)  On September 26, 2009,

7    Plaintiff was provided with notice from Taylor that Plaintiff's approval to receive kosher

8    meals was rescinded and per the order of Defendant Gregory Cox ("Cox"), Deputy Director

9    of NDOC, kosher meals would be provided only to inmates who were recognized as Jews

10   requiring kosher meals by an outside Jewish group or organization.  (Id.)  On September 28,

11   2009, Plaintiff filed an informal grievance challenging his denial of kosher meals and this

12   informal grievance was denied.  (Id.)  Plaintiff appealed the denial of his grievance and

13   received denials at Level Two of the prison grievance process on November 9, 2009 and

14   November 23, 2009.  (Id.)

15        From August 20, 2009 to September 23, 2009, Defendants Brian Williams

16   ("Williams"), Cheryl Burson ("Burson"), and Taylor cancelled all Jewish services to

17   accommodate Muslim inmates during the month of Ramadan.  (Id.)  There is no record of

18   Plaintiff filing, nor does Plaintiff allege he filed, any grievances related to these actions.

19        On October 10, 2009, Plaintiff was attending Jewish services and Defendant Ken

20   Nicholas ("Nicholas") terminated Plaintiff from his prison work assignment.  (Id.)  Plaintiff

21   attempted to explain to Nicholas that Plaintiff was allotted time off from work assignments

22   for weekly worship.  (Id.)  Nicholas responded by telling Plaintiff "You're no damn Jew,"

23   "You're right I'm firing you," and "Around here I'm your god."  (Id.)  On October 12,

24   2009, Plaintiff received disciplinary charges and a hearing.  (Id.)  During this hearing,

25   Defendant Ryan Klein ("Klein") told Plaintiff "Attending service is no excuse to miss

26   work."  (Id.)  Plaintiff was found guilty of failing to attend work and received disciplinary

sanctions.  (Id.)  Plaintiff filed an informal grievance regarding this matter on October 13, 2009.  (Defs.' Mot. to Dismiss (Doc. #24), Ex. 1.)  Plaintiff received responses denying his informal grievance on October 13, 14, and 28.  (Id.)   Plaintiff appealed the denial of his informal grievances to Level One of the prison grievance process, receiving denials on November 6 and 25.  (Id.)  Plaintiff again appealed and received denials at Level Two of the prison grievance process on January 11 and 26, 2010.  (Id.)  Plaintiff also received a denial on December 3, 2009, which did not indicate the grievance level.  (Id.)

On December 11, 2009, Plaintiff filed a five count Complaint against Defendants.  Count I alleges Defendants Howard Skolnik ("Skolnik"), Cox, Williams, Burson, King, and Taylor violated Plaintiff's First Amendment right to free exercise of religion, his statutory rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), and the Equal Protection Clause of the Fourteenth Amendment for requiring an outside organization to verify that Plaintiff is Jewish to be entitled to a kosher meal plan.  Count II alleges Defendants Williams, Burson, and Taylor violated Plaintiff's First Amendment free exercise rights, the RLUIPA, and the Equal Protection Clause of the Fourteenth Amendment when they cancelled Jewish services to accommodate Muslims during the month of Ramadan.  Count III alleges Defendants Cox and Taylor retaliated against Plaintiff for participating in "protected conduct" by rescinding Plaintiff's right to receive kosher meals.  Count IV alleges Defendant Nicholas retaliated against Plaintiff for attending Jewish services by terminating Plaintiff from his prison work assignment and placing Plaintiff under disciplinary charges.  Count V alleges Defendants Nicholas and Klein violated Plaintiff's First Amendment free exercise rights and the Equal Protection Clause of the Fourteenth Amendment when they placed Plaintiff on disciplinary sanctions for missing work while Plaintiff was attending Jewish services.

Defendants filed a Motion to Dismiss alleging that Plaintiff failed to exhaust his administrative remedies regarding Counts II, IV, and V; all five counts fail to state a claim

for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6); Plaintiff's claim under RLUIPA is moot; and Defendants are entitled to qualified immunity.  Plaintiff replies that he has exhausted his administrative remedies with respect to Counts IV and V, pro se litigants' pleadings are to be construed liberally, and that he has stated claims upon which relief may be granted.

## II. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act of 1996 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (2002).  Failure to exhaust administrative remedies is an affirmative defense and the defendants bear the burden of raising and proving failure to exhaust.  Jones v. Bock, 549 U.S. 199, 212-14 (2007).  Proper exhaustion requires that the plaintiff utilize all steps made available by the agency and comply with the agency's deadlines and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 89-90 (2006).  Proper exhaustion must be completed before a complaint may be filed.  Id. at 83-84.

If a defendant on a motion under Federal Rule of Civil Procedure 12(b)(6) presents matters outside the pleadings, the Court may consider them and treat the motion as one for summary judgment.  Fed. R. Civ. P. 12(d).  On a motion for summary judgment, the party seeking summary judgment must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When deciding a motion for summary judgment, the Court views all evidence in the light most favorable to the non-moving party.  County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

Here, Defendants allege that Plaintiff failed to exhaust his administrative

4

1   remedies with respects to Counts II, IV, and V.  Plaintiff states that he properly exhausted

2   his administrative remedies with respect to Counts IV and V.  Because Defendants

3   submitted evidence along with the Motion to Dismiss, the Court will treat it as a motion for

4   summary judgment and view the evidence in the light most favorable to Plaintiff.

5          While it is Defendants' burden to allege and prove Plaintiff's failure to exhaust

6   his administrative remedies, Plaintiff's response does not dispute that he did not exhaust

7   administrative remedies with respect to Count II.  Accordingly, the Court will dismiss

8   Count II of Plaintiff's Complaint for failure to exhaust administrative remedies as required

9   by the PLRA.

10         Counts IV and V stem from Defendants terminating Plaintiff from his prison

11  work assignment and writing Plaintiff up on disciplinary charges for missing work to attend

12  Jewish services.   Administrative Regulation 740 ("AR 740") outlines the grievance

13  procedure for inmates in NDOC custody and provides for one informal and two formal

14  levels of review.  To exhaust his remedies, an inmate first must file an informal grievance.

15  If the inmate is not satisfied with how the grievance is resolved, the inmate then may appeal

16  the grievance to Level One, and then if still not satisfied, appeal to Level Two.

17         Defendants attached copies of Plaintiff's grievance history to their Motion to

18  Dismiss.  Plaintiff's Complaint was filed December 11, 2009.  Therefore, to comply with

19  the PLRA, Plaintiff must have exhausted his administrative remedies before that date.

20  According to Plaintiff's grievance history, Plaintiff initially filed an informal grievance on

21  October 13, 2009 relating to both the termination of his work assignment and the bringing

22  of disciplinary charges against him.  Plaintiff appealed the denial of his grievance, receiving

23  Level One responses confirming the denial on November 6 and 25, 2009, and Level Two

24  responses confirming the denial on January 11 and 26, 2010.  There is also a grievance

25  denial on December 3, 2009.  The grievance history provides no indication of what level of

26  review prompted the December 3, 2009 denial.  Because this grievance is unmarked, and

1   the Court must view evidence in the light most favorable to Plaintiff, an issue of fact

2   remains to wether the December 3, 2009 grievance denial was a Level Two denial.

3   Therefore, Defendants do not meet their burden of proving failure to exhaust administrative

4   remedies.   Accordingly, Defendants' Motion to Dismiss Counts IV and V for failure to

5   exhaust administrative remedies will be denied.

6                    **B.  Failure to State a Claim for Which Relief May be Granted**

7           Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short

8   and plain statement of the claim showing that the pleader is entitled to relief."  Such a

9   statement is necessary to "give the defendant fair notice of what the . . . claim is and the

10  grounds upon which it rests."  William O. Gilley Enter., Inc. v. Atl. Richfield Co., 588 F.3d

11  659, 667 (9th Cir. 2009) (per curiam)  (quotation omitted).  Dismissal of a claim under Rule

12  12(b)(6) for failure to state a claim is appropriate when the complaint fails to satisfy Rule

13  8(a).  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

14          There is a strong presumption against dismissing an action for failure to state a

15  claim.  Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997).  When deciding a

16  motion under Rule 12(b)(6), the Court accepts "all well-pleaded allegations of material

17  fact[] as true and construe[s them] in a light most favorable to the non-moving party."

18  Wyler Summit P'ship v. Turner Broad Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).

19  However, the Court is not required to accept as true allegations that are merely conclusory.

20  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  "The issue is not

21  whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer

22  evidence in support of the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)

23  (overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)).  To

24  survive a Rule 12(b)(6) motion, the plaintiff must do more than merely assert legal

25  conclusions; rather, the complaint must contain sufficient factual allegations to provide

26  plausible grounds for entitlement to relief.  Twombly, 550 U.S. at 555-56 (mere recitation

6

1  of the legal elements of a cause of action is insufficient to survive a Rule 12(b)(6) motion.

2  However, "[p]ro se complaints are to be construed liberally and may be dismissed for

3  failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set

4  of facts in support of his claim which would entitle him to relief."  Weilburg v. Shapiro,

5  488 F.3d 1202, 1205 (9th Cir. 2007) (quotation omitted).

6        Title 42 U.S.C. § 1983 "provides a federal cause of action against any person

7  who, acting under color of state law, deprives another of his federal rights."  Conn v.

8  Gabbert, 526 U.S. 286, 290 (1999).  Section 1983 offers no substantive legal rights, but

9  rather provides procedural protections for federal rights granted elsewhere.  Albright v.

10  Oliver, 510 U.S. 266, 271 (1994).  To maintain a claim under § 1983, "a plaintiff must both

11  (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and

12  (2) allege that the deprivation was committed by a person acting under color of state law."

13  Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

14        When incarcerated, inmates retain their First Amendment rights to free exercise

15  of religion.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  To warrant protection

16  under the First Amendment, a religious belief must be sincerely held and the claim must be

17  rooted in religious belief.  Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994).  The claimant

18  need not be a member of a particular organized religious denomination to demonstrate a

19  sincerely held belief.  Frazee v. Ill. Dep't of Emp't Sec. Div., 489 U.S. 819, 834 (1989).

20  Additionally, protected beliefs are not limited to those that are shared by all members of a

21  religious community.  Callahan v. Woods, 658 F.2d 679, 686 (9th Cir. 1981).  The

22  government cannot rely on a rabbi or outside religious group to determine if an inmate is

23  Jewish.  Jackson v. Mann, 196 F.3d 316 (2d Cir. 1999); Shilling v. Crawford, No. 205CV-

24  00889-PMP-GWF 2007 WL 2790623, *15 (D. Nev. Sept. 21, 2007) (unpublished), aff'd,

25  377 Fed. Appx 702 (9th Cir. 2010).  Rather, the correct test is whether a belief is sincerely

26  held.  Malik, 16 F.3d at 333.

1    However, a prison regulation may "impinge[] on inmates' constitutional

2 rights . . . if it is reasonably related to penological interests."  Shakur v. Schiro, 514 F.3d

3 878, 884 (9th Cir. 2008).  Courts balance four factors to determine whether a prison

4 regulation is reasonably related to legitimate penological interests: (1) whether there is a

5 valid rational connection between the prison regulation and the legitimate government

6 interest put forward to justify it;  (2) whether there are alternative means of exercising the

7 right that remain open to prison inmates; (3) whether accommodation of the asserted

8 constitutional right will impact guards and other inmates or prison resources generally; and

9 (4) whether there is an absence of ready alternatives versus the existence of obvious, easy

10 alternatives.  Turner v. Safely, 482 U.S. 78, 89-90 (1987).

11    The RLUIPA offers further protection of an inmate's freedom to practice his

12 chosen religion and provides that:

13       No government shall impose a substantial burden on the religious exercise of a
         person residing in or confined to an institution . . . even if the burden results from
14       a rule of general applicability, unless the government demonstrates that
         imposition of the burden on that person- (1) is in furtherance of a compelling
15       governmental interest; and (2) is the least restrictive means of furthering that
         compelling governmental interest.
16

17 42 U.S.C. § 2000cc-1(a).   The RLUIPA is "to be construed broadly in favor of protecting

18 an inmate's right to exercise his religious beliefs."  Warsoldier v. Woodford, 418 F.3d 989,

19 995 (9th Cir. 2005).

20    The Equal Protection Clause of the Fourteenth Amendment provides that no state

21 shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S.

22 Const., amend. XIV.  It requires "that all persons similarly situated should be treated alike."

23 Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  To state a Section 1983 claim

24 based on violation of the Equal Protection Clause, the plaintiff must allege the defendant

25 acted with intentional discrimination against the class to which the plaintiff belongs.  Lowe

26 v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

For an inmate to establish a prima facie case of retaliation, a plaintiff must allege that the defendant acted to retaliate against the plaintiff for engaging in a protected activity, and the defendant's actions did not serve a legitimate penological purpose. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1995). The prisoner bears the burden of establishing a link between the exercise of constitutional rights and the retaliatory action. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). The timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).

### 1. Count I

In Count I of his Complaint, Plaintiff alleges Defendants Skolnik, Cox, Williams, Burson, King, and Taylor violated Plaintiff's religious rights pursuant to the First Amendment, RLUIPA, and Equal Protection under the Fourteenth Amendment when they implemented and enforced a policy that denied Plaintiff kosher meals because his Jewish faith was not verified by an outside entity. Because Defendants are employees of NDOC and SDCC, the entities responsible for confining Plaintiff, they are acting under the color of state law. Plaintiff sufficiently has alleged that he was improperly denied kosher meals because he did not have his Jewish faith verified by an outside organization. Such verification is not required for the religious belief of an inmate to be protected under the First Amendment. Rather, all that is required is that the belief be sincerely held and that it be rooted in religious belief. Malik, 16 F.3d at 333. Plaintiff adequately has alleged that he sincerely believes a kosher diet is required of him. Additionally, Defendants have not disputed that a kosher diet is something rooted in the Jewish faith.

Analysis of the Turner factors indicates that Plaintiff has sufficiently alleged enough to survive a motion to dismiss. In regards to the first Turner factor, Defendants argue that the government interest is the orderly administration of a program that allows NDOC to accommodate the religious dietary needs of thousands of prisoners. Defendants

argue they cannot easily prepare kosher foods without disrupting the entire food service process.  Limiting the amount of inmates who receive kosher meals is reasonably related to the government's interest in the orderly administration of its food service.  However, while kosher food may be more costly to prepare, Defendants do not provide any evidence of the increased cost.  Further, NDOC already provides kosher meals to some inmates.  Thus, Plaintiffs' allegations are sufficient to survive a motion to dismiss.

The second factor is whether there are alternative means of exercising the right that remain open to prison inmates.  Turner, 482 U.S. at 89.  Where a prison regulation requires a "believer to defile himself, according to the believer's conscience, by doing something that is completely forbidden by the believer's religion," the second Turner factor favors the inmate.  Ward v. Walsh, 1 F.3d 873, 878 (9th Cir. 1993).  Here, Plaintiff alleges that a kosher diet is required by his religious beliefs.  Consuming a non-kosher diet, therefore, causes Plaintiff to do something forbidden by his religious beliefs.  Accordingly, this factor counsels against Defendants' regulation.

The third factor is whether accommodation of the asserted constitutional right will impact guards and other inmates or prison resources generally.  482 U.S. at 89-90.  Perhaps preparation of kosher meals entails an increased administrative and budgetary burden.  Ward, 1 F.3d at 878.  However, we are at the motion to dismiss stage and no evidence regarding these facts has been provided.  Accordingly, the Court cannot determine in whose favor to weight this factor.  Id. at 878-79.

The last factor is whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives.  Turner, 482 U.S. at 90.  Defendants' requirement that inmates be verified as Jewish to receive a kosher diet violates the established test from Malik where an inmates' beliefs must be sincerely held and rooted in religious belief.  16 F.3d at 333.  Plaintiff alleges Defendants offer a kosher diet to white inmates of the Jewish faith without requiring outside verification.  The obvious, easy alternative is for Defendants

to provide a kosher diet to Plaintiff in the same manner.  Accordingly, the fourth <u>Turner</u> factor goes against Defendants' regulation.  On the balance, the <u>Turner</u> factors counsel that Plaintiff's allegations are sufficient to survive a motion to dismiss.

Defendants allege that Plaintiff's RLUIPA claim is moot because Defendants are "in the process of changing" the regulation requiring outside verification for inmates to receive kosher meals.  However, courts are reluctant to invoke mootness where " a case has become moot because the defendant has voluntarily ceased to pursue the challenged course of action."  <u>Smith v. Univ. Washington Law Sch.</u>, 233 F.3d 1188, 1194 (9th Cir. 2000); <u>see also</u> <u>Seneca v. Ariz.</u>, 345 Fed. Appx. 226, 228 (9th Cir. 2009) (unpublished) (holding that prison's voluntary policy change from policy requiring inmates to submit a verification letter to change their religious designation to one which did not require a letter did not moot the plaintiff's claims under RLUIPA).

Plaintiff adequately has alleged a violation of RLUIPA.  Denying a kosher diet to those whose Jewish faith is not verified by an outside entity substantially burdens an inmate's religious exercise.  Defendants argue this policy is in furtherance of a compelling government interest, namely dealing with the increased costs associated with providing kosher meals.  However, Defendants have not met their burden of showing that this is the least restrictive means of furthering that interest.

Plaintiff also alleges that white inmates of the Jewish faith do not need to have their faith verified by an outside organization to receive a kosher meal plan whereas black inmates do.  This allegation is sufficient to state a claim for violation of the Equal Protection Clause of the Fourteenth Amendment.  Accordingly, Defendants' Motion to Dismiss Count I for failure to state a claim is denied.

### 2.  Count III

In Count III of his Complaint, Plaintiff alleges Defendants retaliated against him and denied him equal protection of the laws when Defendants Cox and Taylor rescinded

Plaintiff's right to receive kosher meals.  Defendants Cox and Taylor are employees of SDCC responsible for confining Plaintiff and are acting under color of state law.  However, Plaintiff does not set forth the protected activity for which he is being retaliated against.  Accordingly, Plaintiff cannot establish a link between the exercise of his constitutional rights and the rescinding of his right to receive kosher meals.  Therefore, Count III of Plaintiff's Complaint fails to state a claim for which relief may be granted and Defendants' Motion to Dismiss Count III is granted.  However, the Court will grant Plaintiff leave to amend his complaint to allege facts consistent with a retaliation claim.  Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962).

### 3. Count IV

In Count IV of his Complaint, Plaintiff alleges Defendant Nicholas retaliated against Plaintiff for exercising his First Amendment right to free exercise of religion and subjected Plaintiff to racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  Because Defendant Nicholas is an employee of NDOC and SDCC, the entities responsible for confining Plaintiff, he is acting under color of state law.  Plaintiff alleges Defendant Nicholas terminated Plaintiff's prison work assignment for attending Jewish services.  Attendance of religious services is a protected activity so long as the religious belief is sincerely held and the claim is rooted in religious belief.  Malik, 16 F.3d at 333.  Taking Plaintiff's factual allegations as true, Plaintiff sincerely believes he must attend religious services and his claim is rooted in religious belief.  The timing of Plaintiff's attendance at Jewish services and the termination of Plaintiff's work assignment is sufficient to show retaliatory intent.  Further, Defendant Nicholas's retaliatory intent is demonstrated by his alleged statements "You're no damn Jew," "You're right I'm firing you," and "Around here I'm your god."  Therefore, Plaintiff sufficiently has alleged Defendant Nicholas retaliated against him.

Additionally, Plaintiff alleges that black inmates, but not white inmates, of

12

Jewish faith have their work assignments terminated for attending Jewish services.  Taking

Plaintiff's factual allegations as true, Plaintiff sufficiently has alleged that Defendant

Nicholas treated similarly situated individuals differently based on racial motivation.

Therefore, Plaintiff sufficiently has alleged a violation of the Equal Protection Clause of the

Fourteenth Amendment.  The Court will deny Defendants' Motion to Dismiss as it relates to

Count IV of Plaintiff's Complaint.

### 4.  Count V

In Count V of his Complaint, Plaintiff alleges Defendants Nicholas and Klein

retaliated against Plaintiff for exercising his First Amendment right to free exercise of

religion and deprived Plaintiff of Equal Protection under the Fourteenth Amendment.

Because Defendants Nicholas and Klein are employees of NDOC and SDCC, the entities

responsible for confining Plaintiff, their actions are under color of state law.  Plaintiff

alleges he was written up on disciplinary charges for attending Jewish services while white

inmates of Jewish faith are not written up on disciplinary charges for attending services.

Attending religious services is protected activity.  Plaintiff alleges he was placed on

disciplinary charges because he attended services.  The two days between Plaintiff's

attendance at Jewish services and his being written up on disciplinary charges is sufficient

to show retaliatory intent.  Taking Plaintiff's factual allegations as true, Plaintiff sufficiently

has alleged that Defendants Nicholas and Klein retaliated against him for engaging in a

protected activity.  Additionally, Plaintiff sufficiently has alleged that Defendants Nicholas

and Klein treated similarly situated individuals differently based on racial motivation.

Therefore, Plaintiff sufficiently has alleged a violation of the Equal Protection Clause of the

Fourteenth Amendment.  The Court will deny Defendants' Motion to Dismiss as it relates to

Count V of Plaintiff's Complaint.

### C. Qualified Immunity

Qualified immunity, "protects government officials from civil liability as long as,

13

'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity requires a two part inquiry: first, whether the facts alleged by a plaintiff establish a violation of a constitutional right; and second, whether the right at issue was clearly established.  Pearson, 129 S. Ct. at 815-16.

The facts alleged by Plaintiff, taken as true, establish a violation of Plaintiff's First Amendment right to free exercise of religion and Fourteenth Amendment right to equal protection before the law.  The right of prisoners to practice their beliefs which are sincerely held and rooted in religious belief is clearly established.  Malik, 16 F.3d at 333; see also Shilling v. Crawford, No. 205CV-00889-PMP-GWF 2007 WL 2790623 (D. Nev. Sept. 21, 2007) (holding NDOC inmates' religious beliefs, including kosher diets, are protected if they are sincerely held).  Additionally, it is clearly established and would be known by a reasonable person that treating inmates differently based on race save for necessities of prison security is unconstitutional.  See Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (citing Cruz v. Beto, U.S. 319, 321 (1972) (per curiam)).  Accordingly, Defendants are not entitled to qualified immunity.

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss for Failure to State a Claim for Which Relief May be Granted (Doc. #24) is hereby GRANTED in part and DENIED in part.  Defendants' Motion is granted with respect to Counts II and III of Plaintiff's Complaint and denied in all other regards.

///

///

///

///

14

1    IT IS FURTHER ORDERED that Plaintiff may file an amended complaint

2  correcting the deficiencies identified in this Order on or before April 18, 2011.

3

4  DATED: March 22, 2011

5

6                                   _____

7                                   PHILIP M. PRO
                                    United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

15